[No. C061943. Third Dist. June 4, 2010.]

ALIKA ROGERS, Plaintiff and Appellant, v.
BELL HELICOPTER TEXTRON, INC., Defendant and Respondent.

## COUNSEL

Franecke Law Group and Louis Stanton Franecke for Plaintiff and Appellant.

The Ryan Law Group, Timothy J. Ryan and Stephen E. Paffrath for Defendant and Respondent.

OPINION

**ROBIE, J.**—Plaintiff Alika Rogers was injured in 2005 when the Bell 47D-1 helicopter she was piloting crashed near the Rancho Murieta Airport. Among others, Rogers sued the helicopter's manufacturer, defendant Bell Helicopter Textron, Inc. (Bell), for negligence. Rogers's claim against Bell was based on an allegedly defective maintenance manual that improperly instructed on balancing the helicopter's tail rotor blades. The helicopter had been in operation since 1951, and the maintenance manual was issued in 1969 and was last revised in 1975.

Bell filed a motion in limine to exclude evidence that the maintenance manual was defective and caused the accident, arguing Rogers's claim was barred as a matter of law by an 18-year federal statute of repose, the General Aviation Revitalization Act of 1994 (Act) (Pub.L. No. 103-298 (Aug. 17, 1994) 108 Stat. 1552, as amended by Pub.L. No. 105-102, § 3(e) (Nov. 20, 1997) 111 Stat. 2215; printed at 49 U.S.C. § 40101, note; further undesignated section references are to the Act).[1]

The trial court granted the motion, agreeing with Bell that the maintenance manual was a "part" of the helicopter and was last revised in 1975, rejecting Rogers's argument that the Act did not apply because the manual was not a part of the helicopter. Bell then successfully moved for a nonsuit based on the lack of admissible evidence against it. Rogers appeals from the resulting judgment against her.

We conclude the maintenance manual here was not a "part" of the helicopter, and therefore the trial court erred in granting Bell's motion in limine and motion for nonsuit.

## DISCUSSION

"The proper interpretation of a statute, and its application to undisputed facts, is a question of law that we review de novo." (*California Forestry Assn. v. California Fish & Game Commission* (2007) 156 Cal.App.4th 1535, 1544 [68 Cal.Rptr.3d 391].) In this de novo review, we begin with the words of the statute. (*Id.* at pp. 1544–1545.)

With exceptions not applicable here, the Act reads as follows:

"(a) . . . no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation

---

[1] The statute of repose runs from the date of delivery of the aircraft, not from the date the accident occurs. (*Lyon v. Agusta S.P.A.* (9th Cir. 2001) 252 F.3d 1078, 1084.) There is a separate statute of limitations that runs from the date of the accident. (*Ibid.*)

aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred—

"(1) after the applicable limitation period beginning on—

"(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or

"(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or

"(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition." (§ 2(a).)

 For purposes of the Act, "the term 'limitation period' means 18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of such aircraft . . . ." (§ 3(3).)

Thus, the Act provides three different triggers for the 18-year limitations period on actions against manufacturers of the "parts" of general aviation aircraft, depending on the nature of the "part" involved. One, for any part that was "originally in" the aircraft, the limitations period runs from the date the aircraft was delivered, either to its first purchaser or lessee (if delivered directly from the manufacturer) or to a person engaged in the business of selling or leasing such aircraft. Two, for any part that was "added to" the aircraft, the limitations period runs from "the date of completion of the . . . addition." And three, for any part that "replaced another . . . part" of the aircraft—whether the part replaced was "originally in, or . . . added to" the aircraft—the limitations period runs from "the date of completion of the replacement."

With this understanding of the Act in mind, we turn to the issue here— whether the allegedly defective maintenance manual was a "part" of the helicopter for purposes of the Act.

The Act does not define the term "part." In common usage, a "part" is "an essential portion or integral element." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 903, col. 1.) In turn, an "element" is "a distinct part of a composite device." (*Id.* at p. 402, col. 2.)

More helpful is the context in which the term appears in the Act. As we have noted, the 18-year limitations period in the Act is triggered by the delivery of the aircraft when an original "part" of the aircraft is at issue, the date of completion of the addition when an added "part" is at issue, and the date of completion of the replacement when a replacement "part" is at issue. Thus, the Act contemplates that the aircraft will be delivered with all of its original parts, although other parts may be added later, and original or added parts may be replaced later.

The concept of delivery is central to Rogers's contention a maintenance manual was not a "part" of the aircraft. Among other things, she argues a maintenance manual is not required to be sold with the aircraft or even to be inside the aircraft. She contrasts it to a flight manual, which is required to be sold with the aircraft, "kept in the airplane and utilized by the pilot to fly the aircraft."

In support of her position, Rogers cites *Caldwell v. Engstrom Helicopter Corp.* (9th Cir. 2000) 230 F.3d 1155 (*Caldwell*). There, a helicopter crashed 10 minutes from its destination because the pilot was unaware the last two gallons of gasoline in the helicopter's fuel tank were unusable. (*Id.* at p. 1156.) The plaintiffs sued the helicopter manufacturer for negligence, contending the flight manual was defective because it did not warn that the last two gallons of gasoline would not burn. (*Ibid.*) The manufacturer moved to dismiss the action, arguing the Act barred the plaintiffs' claims because the "part," i.e., the flight manual, was more than 18 years old. (*Caldwell*, at p. 1156.) The plaintiffs argued that the flight manual, which was revised several times in the preceding 18 years, was a new system or other part that fell within the Act's rolling provision extending the limitation period with respect to any new part that replaced another part. (*Caldwell*, at p. 1156.)

The Ninth Circuit Court of Appeals held the revised flight manual was a part of the helicopter. (*Caldwell, supra*, 230 F.3d at p. 1157.) The court reasoned as follows: "As a matter of logic, there are only two possibilities. Either an aircraft's flight manual is a part of the aircraft, or it is a separate product. Federal regulations require that manufacturers of helicopters include a flight manual with each helicopter and require that the manual contain 'information that is necessary for safe operation because of design, operating, or handling characteristics.' [Citation.] The manual specifically must include information about a gas tank's unusable fuel supply, if the unusable portion exceeds one gallon or five percent of the tank capacity. [Citation.] In the face of these requirements, there is no room to assert that a helicopter manufacturer's manual is a separate product. By the rule of the excluded middle, then, it must be part of the aircraft. [¶] In other words, a flight manual is an integral part of the general aviation aircraft product that a manufacturer sells. It is not

a separate, general instructional guide (like a book on how to ski), but instead is detailed and particular to the aircraft to which it pertains. The manual is the 'part' of the aircraft that contains the instructions that are necessary to operate the aircraft and is not separate from it. It fits comfortably within the terminology and scope of [the Act]'s rolling provision." (*Caldwell*, at p. 1157.)

Contrary to Rogers's argument, Bell suggests that a maintenance manual cannot be distinguished from a flight manual under the reasoning in *Caldwell* because "[federal] regulations governing general aviation aircraft make[] clear that a detailed maintenance manual is a critical part of the manufacturer's product." Just as federal regulations require that a flight manual must be furnished with each helicopter (14 C.F.R. § 27.1581(a) (2010)), Bell asserts that federal regulations require "[t]he manufacturer [to] provide a copy of the maintenance manual to the aircraft's owner." The federal regulation Bell cites, however, has no application here. Specifically, that regulation states, "The holder of a design approval, including either the type certificate or supplemental type certificate for an aircraft, aircraft engine, or propeller *for which application was made after January 28, 1981*, must furnish at least one set of complete Instructions for Continued Airworthiness [i.e., a maintenance manual], to the owner of each type aircraft, aircraft engine, or propeller upon its delivery, or upon issuance of the first standard airworthiness certificate for the affected aircraft, whichever occurs later." (14 C.F.R. § 21.50(b) (2010), italics added.) Since the application for a type certificate for the helicopter here had to have been made long before January 28, 1981, because the helicopter began operating in 1951 and the maintenance manual was not issued until 1969, the regulation had no application.[2]

In a petition for rehearing, Bell contends for the first time that "at all times relevant"—not just since 1981—"the governing [federal] regulations required rotorcraft manufacturers to provide maintenance manuals as a requirement for

---

[2] The Federal Aviation Administration has a multistep certification process for aircraft design and production, the first step being type certification. (*United States v. Varig Airlines* (1984) 467 U.S. 797, 804–805 [81 L.Ed.2d 660, 668–669, 104 S.Ct. 2755]; *GATX/Airlog Co. v. U.S.* (9th Cir. 2002) 286 F.3d 1168, 1171.) To obtain type certification, the applicant must submit "[i]nstructions for continued airworthiness" (14 C.F.R. § 21.24(a)(2)(iii) (2010)) in the form of a manual or manuals (14 C.F.R. § 27, appen. A, ¶ A27.2(a) (2010), italics omitted) containing a "[r]otorcraft maintenance manual or section" (where appropriate) and "[m]aintenance instructions" (14 C.F.R. § 27, appen. A, ¶ A27.3(a), (b) (2010), italics omitted).

However, a maintenance manual is not necessary for maintaining an aircraft's airworthiness under Federal Aviation Administration regulations, as the regulations allow for "other methods, techniques, and practices" aside from those in the manufacturer's maintenance manual when a "person perform[s] maintenance, alteration, or preventive maintenance on an aircraft." (14 C.F.R. § 43.13(a) (2010).)

type certification." Consequently, Bell argues, "the maintenance manual at issue is . . . similar . . . to the flight manual found by . . . the Ninth Circuit to be an aircraft 'part.' "

On the record before us, however, it is far from clear that a maintenance manual was ever delivered, or had to be delivered, with *this* helicopter. Noting that "[t]he helicopter at issue in this action was manufactured in the early 1950's,"[3] Bell contends it was subject to part 06 of the Civil Air Regulations, which was promulgated in 1946 and which governed the eligibility of rotorcraft for type and airworthiness certificates until 1956. (11 Fed.Reg. 6963–6969 (June 22, 1946).) Section 06.60 of those regulations provided that "[a] flight manual shall be provided in the rotorcraft by which the operating personnel are informed of all operation limitations and information necessary for its safe operation. *The manual shall include information essential to the proper maintenance of the rotorcraft.*"[4] (11 Fed.Reg. 6963, 6969, italics added.)

As Bell admits, however, this regulation did not . necessarily apply to military helicopters, because the regulations provided that "[r]equirements of the U.S. Army or Navy, with respect to airworthiness found by the Administrator to provide an equivalent standard of safety, may be accepted in lieu of the requirements set forth in this part." (11 Fed.Reg. 6963 (June 22, 1946) [Civil Air Regs., § 06.00(b)].) This is significant here because, at oral argument, Bell's attorney admitted the helicopter at issue "was a military helicopter" that was "converted to general aviation." Accordingly, we cannot etermine on the record before us whether part 06 of the Civil Air Regulations ever actually applied to this helicopter.

Evidence Bell offered in support of its motion in limine on the statute of repose indicates the helicopter "was a general aviation aircraft as it was certified by the Federal Aviation Administration and issued registration number N16356 on May 11, 1967." Assuming this was the date when the helicopter was converted from military to general aviation use, we still cannot determine whether this helicopter was ever delivered to anyone with a maintenance manual in it. This is especially so because the manual Rogers contends was defective "was first issued in 1969"—two years *after* the helicopter was apparently certified for general aviation use. Moreover, there

---

[3] There is no actual *evidence* in the record of when this helicopter was manufactured. In its trial brief, however, Bell asserted that the helicopter "was 54 years old at the time of the accident," which occurred in 2005. Assuming the truth of that assertion, the helicopter was manufactured around 1951.

[4] Bell notes that beginning in 1956, federal regulations required a maintenance manual *and* a flight manual. (21 Fed.Reg. 10291 (Dec. 22, 1956).)

is no evidence in the record that this 1969 manual was issued to replace an existing manual that had, at some point in the past, been provided with the helicopter.

Despite all of the uncertainty about whether any federal regulation ever required this helicopter to be delivered with a maintenance manual in it, we will assume for the sake of argument that such a regulation *did* exist and that, at some point, this helicopter *was* delivered with the required maintenance manual. We will also assume that the 1969 manual was issued to replace that original manual. Even assuming these facts, however, we conclude the manual was not a "part" of the helicopter for purposes of the Act.

Of primary significance to us in reaching this conclusion is that there does not appear to be any legal requirement that the owner or operator of a helicopter keep the maintenance manual that was delivered with the helicopter (or that was issued to replace that original manual) *on or with* the helicopter.

At least three cases have asserted there *is* such a requirement with respect to *flight* manuals, but we do not find this to be true. In *Colgan Air, Inc. v. Raytheon Aircraft Co.* (4th Cir. 2007) 507 F.3d 270, in distinguishing maintenance manuals from flight manuals the court asserted that "[federal] regulations require a flight manual to be onboard the aircraft. *See* 14 C.F.R. §§ 121.133, 121.139 (2007)." (*Colgan Air*, at p. 277.) The regulations the court cited, however, do not deal with the "flight manual" that must be furnished by the manufacturer to obtain a type certification. Rather, those regulations deal with air carriers that must "prepare and keep current a manual for the use and guidance of flight, ground operations, and management personnel in conducting [their] operations." (14 C.F.R. § 121.133 (2010).) It is appropriate parts of *this* manual that must be "carr[ied] . . . on each airplane" when the "certificate holder [is] conducting supplemental operations . . . away from the principal base of operations." (14 C.F.R. § 121.139 (2010).)

In *Moyer v. Teledyne Continental Motors, Inc.* (2009) 2009 PA Super 124 [979 A.2d 336], the court relied on a decision of the Washington Court of Appeals—*Burton v. Twin Commander Aircraft, LLC* (2009) 148 Wn.App. 606 [221 P.3d 290]—for the proposition that " 'federal regulations . . . require the flight manual to be onboard the aircraft.' " (*Moyer*, 979 A.2d at p. 346.) In turn, *Burton* cited the opinion in *Caldwell v. Engstrom Helicopter Corp., supra*, 230 F.3d at page 1155, for that proposition, asserting that in *Caldwell* "the court cited and relied on the federal regulations that require the flight manual to be onboard the aircraft." (*Burton*, 221 P.3d at p. 295.) But *Caldwell* did not cite or rely on any such regulation. The only regulation cited in

*Caldwell* merely specifies that "[a] Rotorcraft Flight Manual must be furnished with each rotorcraft . . . ." (14 C.F.R. § 27.1581(a)(2) (2000); see *Caldwell*, at p. 1157.)

Nevertheless, whatever the case may be with a flight manual, Bell does not argue that there is any federal requirement that a maintenance manual be maintained on board an aircraft, including the helicopter at issue here. Thus, as Rogers argues, a maintenance manual does not have to be "with . . . or even near the airplane/helicopter" to which it relates.

A second significant point for our purposes is that there is no legal requirement that the maintenance manual provided with an aircraft actually be used in the maintenance of that aircraft. Federal regulations provide that "[e]ach person performing maintenance, alteration, or preventive maintenance on an aircraft, engine, propeller, or appliance shall use the methods, techniques, and practices prescribed in the current manufacturer's maintenance manual or Instructions for Continued Airworthiness prepared by its manufacturer, *or other methods, techniques, and practices acceptable to the Administrator* . . . ." (14 C.F.R. § 43.13(a) (2010), italics added.) Bell asserts "it is unusual for the FAA to approve alternate maintenance procedures," but Bell offers no evidence or authority in support of that assertion.

What that leaves us with is the question of whether a maintenance manual that need not be maintained on or even near the aircraft to which it relates, and which need not necessarily be used in performing maintenance on the aircraft, can reasonably be deemed a "part" of the aircraft for purposes of the Act. We conclude the answer is "no." Adverting to the common understanding of the word "part" as an "essential portion" or "integral element" of a greater whole, we do not believe a maintenance manual that need not be near an aircraft or used for the maintenance of that aircraft can reasonably be deemed an "essential portion" or "integral element" of that aircraft. In our view, this conclusion comports with the commonsense notion that a book that tells you how to fix an item is not itself a "part" of that item.

While we acknowledge the purpose of the Act was to "ameliorate the impact of long-tail liability on a declining American aviation industry" (*Pridgen v. Parker Hannifin Corp.* (2007) 591 Pa. 305 [916 A.2d 619, 622]), we must still adhere to the words of the statute (*California Forestry Assn. v. California Fish & Game Commission, supra,* 156 Cal.App.4th at p. 1545). By selecting the words it did, Congress chose to limit the applicability of the Act to "the components, systems, subassemblies, and other parts of such aircraft." (§ 3(3).) If, as Bell contends, Congress wanted the Act to encompass things like the maintenance manual here, it could have written the Act to reach all items related to the aircraft. It did not.

Our holding is consistent with those from other courts that have considered similar issues. (See, e.g., *Colgan Air, Inc. v. Raytheon Aircraft Co., supra,* 507 F.3d at p. 278 [district court erred in concluding as a matter of law a maintenance manual was part of an aircraft]; *Alter v. Bell Helicopter Textron, Inc.* (S.D.Tex. 1996) 944 F.Supp. 531, 538 [a maintenance manual was not a part originally in or added to the aircraft and a revision to a manual was not a replacement part that started a new limitations period under the Act]; *Moyer v. Teledyne Continental Motors, Inc., supra,* 979 A.2d at p. 344 [a service bulletin that instructed on revised maintenance procedures was not the equivalent of a flight manual for purposes of the Act].)

As the trial court here excluded any evidence of the allegedly defective maintenance manual, ruling it was a part of the helicopter, Rogers was unable to present her theory of the case. Having found that the maintenance manual was not a part of the helicopter, we reverse the judgment against her.

## DISPOSITION

The judgment is reversed. The trial court is directed to enter a new order denying Bell Helicopter's motion in limine based on the Act.

Rogers is awarded her costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

Blease, Acting P. J., and Cantil-Sakauye, J., concurred.

A petition for a rehearing was denied June 30, 2010, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied September 1, 2010, S184441.